E-filing

1  COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT 42 U.S.C. §§ 1983

2

3  Name   Soltero  ,  Victor      D.

4        (Last)        (First)      (Initial)

5  Prisoner Number  CDCR K36340

6  Institutional Address  HIGH DESERT STATE PRISON D5-210
   P.O. Box 3030

7              Susanville, CA 96127

8

9

10            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA

11  VICTOR DANIEL SOLTERO
   (Enter the full name of plaintiff in this action)

12        VS.                          Case No. C 07-4256 PJH (PR)
                                    (to be provided by the clerk of court)
13  JOE MC GRATH; RODERICK Q. HICKMAN;
                                    COMPLAINT UNDER THE
14  M.S. EVANS; G. PONDERS; J. CELAYA; M.      CIVIL RIGHTS ACT,
                                    42 U.S.C. §§ 1983  AMENDED
15  ATCHLEY; J. RUELAS; E. GARCIA; R. SALGADO;  COMPLAINT RE: ORDER
                                    DATED MARCH 10, 2008.
16  C. BEVINS, et al (See II parties B.).
   (Enter the full name of the defendant(s) in this action)

17

18  [All questions on this complaint form must be answered in order for your action
19  to proceed.]
   I. Exhaustion of Administrative Remedies

20  [Note: You must exhaust your administrative remedies before your claim can go
21  forward. The court will dismiss any unexhausted claims.]

22  A.      Place of present confinement  High desert State Prison D5-210
                                    P. Box 3030
                                    Susanville, CA 96127
23  B.      Is there a grievance procedure in this institution?

24          YES (X)      NO ( )

25  C.      Did you present the facts in your complaint for review through the grievance

26          procedure?

27          YES (X)      NO ( )

28  D.      If your answer is YES, list the appeal number and the date and result of the appeal at

[Hand written duplicate of 42 U.S.C. §1983 form]

each level of review. If you did not pursue a certain level of appeal, explain why.

1. Informal appeal <u>Pursuant to California Code of Regulations</u>

<u>(CCR) 3084.5(a)(3) "... informal level shall be waived..."</u>

2. First formal level <u>Pursuant to CCR 3084.5, appeals</u>

<u>coordinator bypass</u>

3. Second formal level <u>SVSPC-06-02822 (denied); SVSP D-06-02255; SVSP</u>
                                                     (denied)↓
<u>(Denied)↓</u>
<u>06-03977; SVSP C-07-00314 (PGRANTED, RVE REHEARD); unlisted</u>

<u>second formal level responses are under VCGCB CLAIM No.: G566372</u>

4. Third formal level <u>IAB CASE No.: 0611035 (Retaliations in section H.(32)</u>

<u>(denied); IAB Case No.: 0610603 (denied); relevant info found in the</u>

<u>decision finding of IAB Case No.: 0509161; unlisted third level responses are</u>
<u>under VCGCB CLAIM No.: G566372</u>

E.    Is the last level to which you appealed the highest level of appeal available to you?

          YES (+)      NO (X) CDCR RESPONSE NOT DEMUCTION WITH VCGCB
                                          (FROM THIRD FORMAL LEVEL).

F.    If you did not present your claim for review through the grievance procedure, explain

why. <u>Any residuum from exhausted claims should not be viewed as 'not</u>

<u>presented'. Or the Plaintiff was in fear of further retaliation, inclu-</u>

<u>ding fear for his life, of further retaliation by CDCR.</u>

II. Parties

    A.    Write your name and your present address. Do the same for additional plaintiffs, if any.

<u>Victor Daniel Soltero K36340, HIGH DESERT STATE</u>

<u>PRISON D5-210, P.O. Box 3030, Susanville, CA 96127</u>

    B.    Write the full name of each defendant, his or her official position, and his or her place of

        employment.

{ <u>See attached additional page(s) labeled</u>

"<u>II. Parties, Section B. (defendants) continued". }</u>

{ II Parties, Section B.(defendants) continued. }

1  (one) Joe Mc Grath, was/is the Secretary of State
2  Deputized for the 'California Department of
3  Corrections and Rehabilitation (CDCR) and is the
4  signatured apon Administrative Bulletin (AB)
5  05/02 (the protocol for the pilot program). The
6  known address(es) for the California Secretary(ies)
7  are: 1500 11th St., Sacramento, CA 95814 and,
8  the known address for CDCR is: P.O. Box 942883,
9  Sacramento, CA 94283-0001;
10 (two) Roderick Q. Hickman, was/is the Secretary
11 of CDCR. The known address(es) are the same
12 as in above-(one);
13 (three) M.S. Evans, was/is the Warden of Salinas
14 Valley State Prison (SVSP), the known address
15 for SVSP is: P.O. Box 1050, Soledad, CA 93960;
16 (four) G. Ponder, was/is the Facility C Yard
17 Captain at SVSP. The known address is the
18 same as in above-(three);
19 (five) J. Celaya, was/is the lieutenant of facility C
20 yard at SVSP. The known address is the same
21 as in above-(three);
22 (six) M. Atchley, was/is the Sergeant of Facility
23 C yard at SVSP. The known address is the same
24 as in above-(three);
25 (seven) J. Ruelas, was/is an Correctional Officer
26 (%) of Facility C at SVSP. The known address
27 is the same as in above-(three);
28 (eight) E. Garcia, was/is an Correctional Officer

{II Parties, Section B. pg 2 (defendants) continued}

(%) of Facility C, at SVSP. The known address
is the same as in above-three;

(nine) R. Salgado, was/is %, of Facility C, at SVSP.
The known address is the same as in above (three);

(ten) C. Bevins, was/is %, of Facility C, at SVSP. The
known address is the same as in above-(three);

(eleven) B. Chavez, was/is %, of Facility C, at SVSP.
The known address is the same as in above(three);

(twelve) D. Moreno, was/is %, of Facility C, at SVSP.
The known address is the same as in above-(three);

(thirteen) L. Flowers, was/is %, of Facility C, at SVSP.
The known address is the same as in above-(three);

(fourteen) P. Lopez, was/is %, of Facility C, at SVSP.
The known address is the same as in above-(three);

(fifteen) R. Briones, was/is %, of Facility C, at SVSP.
The known address is the same as in above(three);

(sixteen) D. Smethers, was/is %, of Facility C, at SVSP.
The known address is the same as in above-(three);

(seventeen) R. Lapurga, was/is %, of Facility C, at SVSP.
The known address is the same as in above-(three);

(eighteen) ████ Jones, was/is an Sergeant at
Facility C, at SVSP. The known address is
the same as in above-(three);

(Nineteen) V. Solis, was/is Correctional Counselor
II, of Facility C, at SVSP. The known address
is the same as in above(three);

[NOTE: THE NAMES OF ALL THE DEFENDANT(S) RECORDED ON AN VIDEO TAPE ARE
UNKNOWN TO THE PLAINTIFF AT THIS TIME, AND WILL REQUIRE DISCOVERY DISCLOSURE..]

(twenty) J. Stevenson, was/is an Lieutenant, of Facility 'C', of SVSP. The known address is the same as in above-(three);

(twentyone) R. Mott, was/is BMU Facilitator, of Facility 'C', at SVSP. The known address is the same as in above-(three);

(twentytwo) M. Nilsson, was/is sergeant of Facility C yard, at SVSP. The known address is the same as in above (three).

III.    Statement of Claim.

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

(See additional page(s) labeled:
III Statement of Claim Continued)

IV.    Relief.

Your complaint cannot go forward unless you request specific relief. State briefly exactly what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

(See additional page(s) labeled:
III Statement of Claim
IV Relief Continued)

{ III Statement of Claim, continued }

(ONE) ON OCT. 2, 2006, the defendant (Correctional officer J. Ruelas), "sucker punched" the Plaintiff while the Plaintiff was in mechanical restraints, maliciously and sadistically (which resulted in bruising and swelling) for the very purpose of causing the Plaintiff harm, in violation of the Eight Amendment right secured by the Constitution or law of the United States, and the deprivation (to be free from cruel and unusual punishment) was committed by the said-defendant acting under the color of state law. The force used by the said-defendant, was not justified by any legitimate law enforcement or prison management need, or was completely out of proportion to that need.;

(TWO) The defendant (Correctional Officer E. Garcia) is an accomplice and cohort to the physical attack apon the Plaintiff, in violation of the Eight Amendment of the US. Constitution, for his actions in collaboration with defendant J. Ruelas on Oct. 2, 2006, by physically participating in the attack against the Plaintiff noted at above (ONE). The deprivation of the Plaintiff's right(s), by the defendant (Correctional Officer E. Garcia), was committed by the said-defendant acting under the color of state law. The force

1 used by the said-defendant, upon the Plaintiff,
2 was not justified by any legitimated law
3 enforcement or prison management need, or was
4 completely out of proportion to that need.;
5
6 (THREE) The defendant (M. Atchley), is the person
7 whom commenced the melee, and lead the physical
8 charge the Plaintiff and other inmate(s), on Oct. 2,
  against.
9 2006. The said-defendant performed an illegal
10 cell-extraction against known protocol, by
11 commanding the cell #225 door to be opened.
12 Subsequently entering and removing by means
13 of physical force, inmate(s) L. Vega #49838,
14 and Guzman # K82787, with the aid of
15 other defendant(s) (R. Salgado, C. Blevins,
16 and B. Chavez) using physical force. The
17 said-defendant(s) were acting to encourage
18 and incite the melee, and are accomplice to
19 the action(s) of their co-defendant(s) in (ONE)
20 , and (TWO). The said-defendant(s) also assisted
21 in manufacturing documentation to conceal
22 and compound a crime.
23
24 (FOUR) The Plaintiff was an idividualist, not
25 positioned amongst inmate(s) Guzman, nor
26 Vega, nor involved, but was simultaneously
27 attacked, as noted at above (ONE), and (TWO).
28 [NOTE: THE PROTOCOL AND PROCEDURE FOR INMATE(S)

1  WHO 'HOLD' CUFFS, TRAYS, ect.. AND WARRENTS AN EXT-
2  RACTION, INCLUDES FIRST CLEARING AND SECURING
3  THE IMEDIATE AREA, IN THIS INSTANCE THE DAY ROOM
4  FLOOR, AMONGST OTHER KNOWN PRONGS SUCH AS :
5   GEARING UP; CHAIN OF SUPERVISORY APPROVAL ;
6  VIDEO MONITORING; EXPLORATION OF OTHER READILY
7  AVAILABLE ALTERNATIVES . ect.] These defendant(s)
8  were not acting in any legitimate law enforcement
9  or prison management need, or was completely
10  out of proportion to that need. This was an
11  melee, that the defendants) literally dragged
12  the Plaintiff into..
13
14  (FIVE) The defendant ( J.Celaya), on Oct 2, 2006,
15  did move through an 'pack of Correctional Off -
16  icers (located between himself and Vega#V49334)
17  yelling," ... get out the way, get out the way..."
18  (something to that affect), and performed an Martial
19  Arts type maneuver on inmate Vega from behind,
20  slamming inmate Vega onto the concrete.
21
22  (SIX) The said-defendant ( J.Celaya) was not acting
23  in any legitimate law enforcement or prison
24  management need, or was completely out of
25  proportion to that need. Inmate Vega was
26  acting in compliance to the commands of his
27  escorting designate(s) at the time he was
28  attacked by the defendant.

1  (SEVEN) The said-defendant ( J. Celaya) was an active
2  participant in the melee. The defendant acted and
3  moved in incitement and encouragement of the
4  melee. The defendant is an accomplice to the
5  actions of his co-defendants of the melee. The
6  said-defendant also assisted in the manufact-
7  uring of documentation to conceal and comp-
8  ound a crime.
9

10  (EIGHT) The defendant (D. Moreno), did act in coll-
11  aboration, and was an participant in the melee
12  which occured on Oct. 2, 2006. The said-defen-
13  dant acted as an accomplice to above-noted
14  (ONE) thru (SEVEN) in facilitating and assisting
15  the actions of their co-defendant(s). The
16  said-defendant also assisted in the manu-
17  facturing of documentation to conceal and
18  compound a crime.
19

20  (NINE) The defendant (L. Flowers), did act in
21  collaboration, and was an participant in the
22  melee which occured on Oct. 2, 2006. The
23  said-defendant acted as an accomplice to
24  above-noted (ONE) thru (SEVEN) in facilitating
25  and assisting the actions of the co-defend-
26  ant(s). The said-defendant also assisted in the
27  manufacturing of documentation to conceal
28  and compound a crime.

1  (TEN) The defendant (P. Lopez), did act in coll-
2  aboration, and was an participant in the melee
3  which occured on Oct. 2. 2006. The said-
4  defendant acted as an accomplice to above-
5  noted(ONE) thru (SEVEN) in facilitating and
6  assisting the actions of his/her co-defendants).
7  The said-defendant also assisted in the manu-
8  facturing of documentation to conceal and
9  compound a crime.
10

11  (ELEVEN) The defendant (R. Briones), did act
12  in collaboration, and was an participant in
13  the melee which occured on Oct 2, 2006.
14  The said-defendant acted as an accomplice
15  to above-noted (ONE) thru(SEVEN) in facilitat-
16  ing and assisting the actions of his/her co-
17  defendants). The said-defendant also ass-
18  isted in the manufacturing of documentation
19  to conceal and compound a crime.
20

21  (TWELVE) The defendant (D. Smethers), did act
22  in collaboration, and was an participant in
23  the melee which occured on Oct. 2, 2006. The
24  said-defendant acted as an accomplice to
25  above-noted (ONE) thru(SEVEN) in facilitating
26  and assisting the actions of his/her co-
27  defendants). The said-defendant also
28  assisted in the manufacturing of docum-

-3-5-

entation to conceal and compound a crime.

(THIRTEEN) The defendant (R. Lapurga), did act in collaboration, and was an participant in the melee which occured on Oct. 2, 2006. The said-defendant acted as an accomplice to above-noted (ONE) thru (SEVEN) in facilitating and assisting the actions of his/her co-defendants). The said-defendant also ass- isted in the manufacturing of documentation to conceal and compound a crime.

[NOTE: THE EXIBIT FOR (ONE) thru (THIRTEEN) IS EXIBIT 'B' of 42 USC 1983 COMPLAINT FILED AUG 20, 2007, IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA. THE PLAINTIFF WAS NOT ABLE TO MAKE COPIES (PERSONAL) OF THIS COMPLAINT AND GIVES NOTICE, FROM THE DATE OF THE COURT ORDER MARCH 10, 2008, TO THIS DATE MARCH 26, 2008, THIS COMPLAINT FOWARD TO THE COURT. THE LAW LIBRARY HERE IN ADMINISTRATIVE SEGREGATION FOR BUILDING D-5, HAS NOT BEEN OPERATIVE, THIS DENIES THE PLAINTIFF ACCESS TO MAKE COPIES. PLEASE TAKE INTO CONSIDERATION, THAT AN PEN FILLER AND BLANK PAPER IS THE ONLY MATERIAL THE PLAINTIFF HAD ACCESS TO FOR PREPARATION AND COMPOSITION OF THIS COMPLAINT.]

(FOURTEEN ) The defendant (G.Ponder ) acting in
collaboration, deliberately abused policy and
procedures to retaliate against the Plaintiff
for filing greivence(s), in violation of the first,
fifth, fourteenth, and eighth Amendment
right(s) secured by the Constitution or law
of the United States, and the deprivation
of the Plaintiff's right(s), was by the said-
defendant acting under the color of state
law. The said-defendant did conspire and
manufacture false documentation for the
purpose of maliciously causing harm upon
the Plaintiff, which include numerous Rules
Violation Reports 115 (RVR 115's), Behavior
Modification Unit (BMU) placement(s)/Adm-
inistrative Segregation (ASU) placement(s)
("hole"), and vindictive/malicious labeling of
the Plaintiff with stigmatization(s) of known
taboo criterion, in the California prison
system, General Population (namely,
pseudo-"safety concerns/Protection", "org-
anized Criminal Activities...'ect.), which
resulted in an attempted murder upon the
Plaintiff.

(fifteen    ) On October 2, 2006, then and there, right-after the physical alteration described at-(ONE), the Plaintiff was taken directly to the program Office area, and taken before the committee (in the program office area), where the defendant (G. Pandor ) was the chairman of the committee. Simply put, the Plaintiff was ruffed up by the staff and taken before the committee, under subsidiary terms. (See Exibit Amend C.)

(sixteen    ) In the presence of the committee, at the Oct 2, 2006 hearing noted-above, the Plaintiff found himself distraught and in dismay by the events of the staff and committee's actions, and requested that the hearing be held in absentia. (See Exibit Amend c). The plaintiff was returned to his cell.

(seventeen    ) At some point in time, subsiquent to the physical alteration noted at (one), an Medical Tech. reported the staff misconduct. The defendant (Sergeant M. Atchley) at sometime during the night of October 2, 2006, was accompanied by approximately 15 uniformed employees of CDCR, removed the Plaintiff from his assigned living quarter, to the program area. In an threatening manner.

1 (eighteen  ) In route from the Plaintiff's assigned
2 living quarter, to the program office area, an
3 uniformed employee held an video camera and
4 recorded the following events:
5

6 (a) The Medical Tech. (name unknown to the
7 plaintiff) is recorded on the video tape exa-
8 mining the swelling and brusing on the back
9 of the Plaintiff's head, where he was "sucker
10 punched". And is recorded filling out Medical
11 reports, which are missing;
12

13 (b) The defendants (Sergeant Atchley and
14 Sergeant Jones), and the mob of uniformed
15 employees (names unknown), are recorded
16 visually and audibly attempting to conceal
17 and compound the events of 'staff misconduct'
18 by threatening and intimidating the Plaintiff,
19 to aquire a statement in coercion. Having
20 the Plaintiff denounce the Medical Tech's
21 reporting of the Oct. 2, 2006 staff'miscond-
22 uct';
23

24 (c) The said-video recording, recorded
25 exactly what was said, and by whom;
26 (d) This was not the known procedure. (or 43
27 [NOTE: THE THREATS, AND CONTENT OF THE THREAT(S), WERE
28 LATER CARRIED OUT AMONGST THE RETALIATIONS AND

- or 43b.)

-3 - 7-

1   REPRISALS AGAINST THE PLAINTIFF].
2

3   (nineteen    ) The defendant (G. Pondor ) was/is
4   the Captain of SVSP, 'C' Facility, on Oct. 2, 2006.
5   Under his command, the Plaintiff was held in
6   his assigned cell 228, building C8, at SVSP,
7   for two weeks after the physical alteration
8   noted at (ONE). This is known as "being "sat on",
9   an control factor to conceal and compound. It
10  is not the known procedure.
11

12  (twenty     ) The Plaintiff, on October 16, 2006,
13  was placed in administrative segregation by
14  the defendant ( J. Celaya), with pseudo-safe-
15  ty concerns. And the 'decision' for the place-
16  ment under the fictitious and stigmatic
17  'reason for placement', was made by the
18  defendant (G. Pondor ). (see Exibit _Amend 'E'_.)
19

20  (twenty one ) On Oct 26, 2006, the Plaintiff
21  appeared before the SVSP's, ASU Institutional
22  Classification Committee (ICC), for ASU
23  placement review. The Plaintiff emphatically
24  denied having any 'safety' concerns. (see Exibit
25  Amend. 'A'.).
26

27  (twenty two  ) The Investigative Security
28  Unit (ISU), investigated, and completed

-3-10-

the investigation on 12.5.06, into the 'reason for placement' of the Plaintiff in ASU (noted-above) and the reason for placement was found to be untrue. (see Exibit A and 'B').

(twenty three) On Dec. 12, 2006, the Plaintiff was returned to Facility 'C', SVSP, by I.C.C. The Plaintiff was placed officially back into the BMU on Dec. 13, 2006, by SVSP, Facility 'C', Unit Classification Committee (UCC). The defendant ( ).Celaya) was the chairman. (see Exibit Amend 'B').

(twenty four ) The Plaintiff remained in the BMU until March 26, 2007, **when** the defendants (G. Randers, V Solis, J. Stevenson, etal.) acting in collaboration, abused policy and procedures, in retaliation, when they placed and held the Plaintiff in ASU until the Plaintiff was transfered to High Desert State Prison in Sept. of 2007. (See Exibit Amend 'D', and Amend 'E'.)

(twenty five ) The pretext for the Plaintiff's March 26, 2007, ASU Placement by the above-named defendants was "...refusal to participate in the interview process..." (see Exibit Amend 'D'.) "... and posed

-3-11-

a threat." [NOTE: FACTUALLY, THERE WAS NO THREAT, NOR WAS ANY THREAT EVER NAMED, WHICH THE PLAINTIFF ACTUALLY POSED. NOTE²: KEEP IN MIND, THE PLAINTIFF WAS PLACED IN ASU FOR NOT INTERVIEWING.].

(twenty six) The said-defendants (listed above) 'mercurialness', as to the reason for the Plaintiff's ASU placement, is revealed on the 128G, of Aug. 9, 2007, which states in part,"... during his placement in BMU he disrupted the program by shouting out of his cell for others not to participate in the program. Since his removal from the GP the program has been running ...., has an strong influence over the southern hispanic population." [THIS IS MISINFORMATION AND MENDACITY.]⁵

(a) The reference(s) in the above-noted 128G of 8.9.2007, are an interpolation of an 128B dated 5.01.2007. (See Exibit Amend. 'D');

(b) The above-noted 128B of 5.01.2007, is an interpolation of an 3.23.2007, RVR 115#C07-03-0024, Authored by Motts. (See Exibit Amend. 'G');

(c) The Plaintiff was found 'not Guilty' of the above-noted RVR 115@(b), the factors were proven to be untrue, upon adjudication. (See Exibit Amend. 'G.');

- 3-12 -

(d) Both Inmates, Hart # H88709 and, Sneede # J37911, are not Southern Hispanic Inmates, in fact they are black folk (See Exibit Amend. 'G'.);

(e) The defendants (G. Randers, V. Solis, etal.) moved ahead with this false documentation, knowing it was not true, and fully aware of the above-noted factor(s) (a) thru (d). (See the 8.9.2007, 128G, previously foward foward in 'expedite motion'.);

(f) Recorded on the 8-9-2007, 128G, is the signatures of the defendants, in acknowle-dgment of the RVR(s) disposition", ... dismiss-ed in the interest of justice";

(g) At Exibit Amend 'F', is the 128 G of 7.5.2007, noting "... extension to complete disciplinary process, ...", and in the 'DISCIPLINARY HISTORY' section, the identification of the pending disciplinary, "failure to meet program expectations (PENDING), willfully resisting a Peace Officer".;

(h) From Dec 13, 2006, to March 26, 2007, (See twenty three) and (twenty four ), when Plaintiff was in the BMU. The BMU was up and running. Interestingly enough, the Plaintiff has found

-3-13-

that in the Administrative Bulletin AB 05/02
(the protocol for the pilot program. BMU.), it
states that records of the BMU are foward to
the Director of High Security CDCR.

(twenty seven ) The Plaintiff based his decision
not to interview ('Prison snitch') on an CDCR,
Sacramento Inmate Appeal Branch (IAB)
response, IAB Case No.: 05-09161, which
states in part, "...there is no regulation which
allows staff to discipline an inmate for
refusing to interview or for not signing an
promise to behave chrono..". Correspondance
copies were foward to the Warden and
SVSP appeals coordinator.

(twenty eight ) The basic gist of the phrase,
"Recurring Failure to meet Program
Expectations" (i.e. not signing) amounts to:
(1.) Prison snitch or (2.); conceding to
'Organized Criminal Gang activity'. The
Plaintiff simply did not want to be villain-
ized, nor stigmatized.

(twenty nine ) The RVR 115 # C07-01-0014,
for, "recurring failure to meet program expect-
ations", authored by the defendant (R. Mott)
on 1-11-2007, was subsequent to the

IAB Case No.: 05 09161 response, and an
abuse of policy and procedure to retaliate
against the Plaintiff. (See Exibit Amend.'H-1').

( THIRTY    ) The RVR 115 # C06-10-0017, for
"recurring failure to meet program expectations",
authored by the defendant ( V. Solis ) on 10.2.2006,
was subsequent to the IAB Case No.: 05 09161
response, and an abuse of policy and procedures
to retaliate against the Plaintiff. (See Exibit Amend. H-2')

( THIRTY ONE  ) The RVR 115 # C06-12-0047, for
"recurring failure to meet program expectations",
authored by the defendant ( B. Chavez ) on
12.26.2006, was subsequent to the IAB Case
No.: 05 09161, response, and an abuse of
policy and procedure to retaliate against
the plaintiff. [NOTE: DEFENDANT (B. CHAVEZ) CLAIMED
HE NEVER AUTHORED THE RVR, AND IT WAS UNBEKNOWNST.]
(See Exibit Amend.'H-3')

( THIRTY TWO  ) The 128 B chrono, for "recurring
failure to meet program expectations", authored
by the defendant ( G. Pondor ) on 8.23.06,
was subsequent to the IAB Case No.: 05 09-
161 response, and an abuse of policy and
procedure to retaliate against the Plaintiff.
(See Exibit Amend 'H-4')

( THIRTY THREE  ) The 128 A chrono, for recurring

1  failure to meet program expectations", auth-
2  ored by the defendant (M. Nilsson) on 12.28.
3  2006, was subsequent to the IAB Case No.:
4  05 09161 response, and an abuse of policy
5  and procedure to retaliate against the
6  Plaintiff. (see Exibit Amend.'H-5').

7
8  (                    ) ─ ─ .
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  (THIRTY FOUR ) Please take notice that prior to the
2  noted deprivations, the defendant (G. Ponder)
3  effectively used an 'attack' ("attempted murd-
4  er of Correctional Officers"), as an guise to
5  mask and proffer an alterior adjenda, as well
6  as justify abuse.
7
8  (THIRTY FIVE ) The use of an reinforcement stratigy
9  by the defendant (G. Ponder) is no psycholog-
10  ical marvel. Never the less, it is quite effict-
11  ive. Sow an advantage... reap an habit. Using
12  misinformation and mendacity, the said-defe-
13  manufactured memorandums dated November
14  14, 2005, and December 29, 2005. These memo-
15  randums were distributed amongst the
16  staff, for the purpose of reinforceing pre-
17  judice and animosity in contra of the
18  Plaintiff. The memorandums interpolate the
19  July 14, 2005, 'attack' noted above, the
20  Plaintiff name(d), and a determination of
21  a threat the Plaintiff posed.
22
23  ( THIRTY SIX  ) Sorting through the many prongs
24  of the defendant(s) efforts to compound and
25  conceal, the Plaintiff has found it simpler to
26  articulate the discernment of facts by
27  application of " The Principals ) of entail-
28  ment'. Where we can now discern the

1  the defendants actions of deprivation, are
2  contrary to the principals of Entailment'.
3
4  (THIRTY SEVEN) Factually, the Plaintiff had
5  absolutely nothing to do with the 'attack'
6  noted-above, nor any knowledge of the
7  occurance, other then that provided on
8  the said-memorandums. The plaintiff was
9  not in or around that location, and there is
10 no basis, offer of proof, substantion, nor
11 evidence in connection with the Plaintiff.
12
13 (THIRTY EIGHT ) Nor, was/is there any grounds
14 for questioning or interviewing the Plaintiff
15 in connection to the said-matter. Curiously
16 enough, the defendant (G. Ponder) was well
17 aware of these facts.
18
19 (THIRTY NINE ) The said-defendant was
20 attempting to involve the Plaintiff in
21 'snitching', against the Plaintiff's will, by use
22 of an smear campaign and submission tactics.
23 The Plaintiff has no obligation to act as an
24 Agent, Informant, nor Operative, to coll-
25 ect and gather information for the state.
26
27 (_____) Had
28

-3-18-

1  (FORTY      ) subsequent to the above-noted
2  11.14.05, and 12.29.2005, memorandums, and
3  the IAB Case No.: 05 09161 responses, the
4  defendant (G.R. vao) retaliated against the
5  Plaintiff, by placeing the Plaintiff in the BMU.
6  The defendant(s) combed the Plaintiff's central
7  file (C-file) and retroactively used an '2002
8  riot', as the pretext for the BMU placement
9  of the Plaintiff.
10

11  (FORTY ONE    ) Under the above-said dub-
12  ious and highly suspect conditions, the
13  Plaintiff saught the known safegaurd
14  protection under the law. The Plaintiff
15  contacted and foward an copy of the SVSP
16  BMU 'Orentation Booklet, General Rules and
17  Procedure', to the Office of Administrative
18  Law (OAL), in re: California Penal Code
19  (d)(1)(C), and Government Code 11340.
20

21  ( FORTY TWO ) The OAL return correspondance
22  revealed the "conditions' for an authorized
23  pilot program had not been met. (see Exibit
24  Amend.    ). The OAL correspondance states,
25  " ... The Office Of Administrative Law
26  cannot identify any regulations on point...".
27  (see Exibit Amend.    ). The BMU at SVSP was
28  operating pursuant to 'Underground' regulations.

1 (See Exibit(s) Amend.'K-1', Amend.'K-2', and Amend.
2 K-3'.).
3

4 (FORTY THREE) The defendant(Roderick Q.
5 Hickman), is/was the custodial gaurdian of the
6 Plaintiff, and is responsible for the welfare
7 of the Plaintiff, as well as the operation(s) of
8 the California Department of Corrections
9 and Rehabilitation (CDCR), and its staff and
10 employees.
11

12 (FORTY FOUR) The defendant (Joe McGrath), is/
13 was also an higher-level custodial gaurdian
14 of the plaintiff, and is responsible for the
15 welfare of the Plaintiff, as well as the oper-
16 ation(s) of CDCR, its staff and employees.
17 Said-defendant is also the signatory (signer)
18 of the Administrative Bulletin (AB) 05/02
19 (the protocol for the pilot program, Behavior
20 Modification Unit (BMU).
21

22 (FORTY FIVE ) The defendant (MS. Evans), is
23 also an higher-level custodial gaurdian of
24 the Plaintiff, and responsible for the welfare
25 of the Plaintiff, as well as the operation(s)
26 of Salinas Valley State Prison (SVSP), its
27 staff and employees. The said-defendant is
28 also the signatory (signer) of the

-3-20-

1    SVSP. BMU 'Orentation Booklet, General
2    rules and Procedures'. Also an signatury
3    (signer) of memorandum Dec. 29, 2005. (see
4    Exibit Amend. I ).
5
6    { V
7    { See memorandum of points and
       authiorties in support of complaint}
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4   I declare under penalty of perjury that the foregoing is true and correct.

5

6   Signed this  26   day of  March   , 20 09

7

8

(Plaintiffs signature)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                          - 4 -

(1) THE ASSISTANCE OF THE ATTORNEY GENERAL'S
OFFICE, AND ATTORNEY GENERAL, ~~IN COMPLIANCE~~
~~with 42 USC 1997~~ TO REMEDY THE MINIMUM
STANDARD OF HUMAN DECENCY' ISSUE(S), AND THE
CONSTITUTIONALLY GUARANTEED MINIMA' DEP-
RIVATION(S) IN THE CALIFORNIA DEPARTMENT
OF CORRECTIONS AND REHABILITATION (CDCR);

(2) THE SAFEGAURD PROTECTION BY THE OFFICE
OF ADMINISTRATIVE LAW, TO REDRESS THE
REGULATION INADEQUACIES OF CDCR'S
"Underground" REGULATIONS;

(3) THE CALIFORNIA DEPARTMENT OF CORRE-
CTIONS AND REHABILITATION (CDCR), OR IF
NECESSARY AN APPOINTEE 'MASTERS' TO
REMOVE THE STIGMATIC AND RETALIATORY
MATERIAL FROM THE PLAINTIFF'S FILE;

(4) JUST COMPENSATION AND MONETARY DAMAG-
ES TO BE PAID BY THE DEFENDANT(S) IN THEIR
PERSONAL AND/OR PROFESSIONAL CAPICITY,
INDEPENDANTLY OR AS AN WHOLE (WHICHEVER
IS DEEMED APPROPIATE FOR EACH INSTANCE),
FOR THE FOLLOWING AMOUNT AND REASON
SET FORTH:

(a) FOR THE ABUSE(S) OF POLICY AND PROCEDURE(S)

1  IN RETALIATION AGAINST THE PLAINTIFF, WHERE
2  THE DEFENDANT(S) VINDICTIVELY AND MALICIOUSLY
3  STIGMATIZED THE PLAINTIFF WITH KNOWN TABOO
4  CRITERION, FOR THE DELIBERATE PURPOSE OF
5  CAUSING THE PLAINTIFF HARM. AND THEN, DID
6  RESULT IN AN ATTEMPTED MURDER (MULTIPLE
7  STABS AND GASHING INJURIES) APON THE
8  PLAINTIFF. THE AMOUNT OF $5,000,000.00;
9
10  (b) FOR THE DEFENDANT(S) PHYSICAL ABUSE OF
11  THE PLAINTIFF, BY 'SUCKER PUNCHING', AND
12  RUFFING UP THE PLAINTIFF, CAUSING BRUISING
13  AND SWELLING TO THE BACK OF THE PLAINTIFF'S
14  HEAD. THE AMOUNT OF, $1,000,000.00;
15
16  (c) FOR EACH DAY THE PLAINTIFF SUFFERED IN THE
17  SVSP-BMU, RESULTING FROM THE ABUSE OF
18  POLICY AND PROCEDURE(S) IN RETALIATION AND/OR PURSUANT
19  TO 'Underground' REGULATIONS, THE AMOUNT
20  OF $100.00 for each day, FROM EACH DEFEND-
21  ANT ~~APPLICABLE~~;
22
23  (d) FOR EACH DAY THE PLAINTIFF SUFFERED IN
24  THE SVSP-ASU, RESULTING FROM THE ABUSE
25  OF POLICY AND PROCEDURE(S) by THE DEFEN-
26  DANT(S) IN RETALIATION. THE AMOUNT OF,
27  $100.00 FOR EACH DAY, FROM EACH DEFENDANT.
28

(5) FOR CDCR TO ISSUE MANUAL(S) AND PROVIDE
TRAINING TO IT'S EMPLOYEE(S) IN REGARD TO
THE FOLLOWING:

(a) PROHIBITION OF RETALIATION;

(b) THE PROCEDURES FOR PROMULGATION AND
PROCEDURAL REQUIREMENTS FOR ENVISIONED
REGULATION(S) AND ORDINANCE;

(c) IDENTIFY(ING) AND MAKING KNOWN THE
'MINIMUM STANDARD OF HUMAN DECENCY', AND
'CONSTITUTIONALLY GUARENTEED MINIMA'.

(6) Attorney fee(s) to be paid to Plaintiff, in
this amount of $ 25,000⁰⁰ from each defendant.

V. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPLAINT.

# KNOW YOUR RIGHTS
# ASSAULT AND EXCESSIVE FORCE

### ACLU NATIONAL PRISON PROJECT

*Much of the following information was taken from a book by John Boston &
Daniel Manville called the Prisoners' Self-Help Litigation Manual (3d ed. 1995).*

**Important Note:** The law is always evolving. If you have access to a prison law
library, it is a good idea to confirm that the cases and statutes cited below are still
good law. The date at the bottom of this page indicates when this information
sheet was last updated.

### Protection from Assault
Prison officials have a legal duty to refrain from using excessive force and to
protect prisoners from assault by other prisoners. "Being violently assaulted in
prison is simply not part of the penalty that criminal offenders pay for their
offenses against society." See Farmer v. Brennan, 511 U.S. 825, 833 (1994).
However, prison officials are not automatically responsible for all assaults on
prisoners, and a prison official's use of force does not automatically violate the
Constitution. Courts apply different rules to decide whether the Eighth
Amendment has been violated after an assault by a prisoner or a use of force by
prison staff.

### Assault by Another Prisoner
Prison officials may be held liable under the Eighth Amendment only if they act
with "deliberate indifference" or "reckless disregard" for a prisoner's safety. See
id. at 836-37. In other words, prison officials may be liable if they knew that a
prisoner was at substantial risk of serious harm, but ignored that risk and failed to
take reasonable steps to protect the prisoner. See id. at 847. Generally, courts
have distinguished between a substantial risk of serious harm (or strong
likelihood of injury) and the everyday risk of harm that comes from being in prison
(or mere possibility of injury). See, e.g., Brown v. Hughes, 894 F.2d 1533, 1537
(11th Cir. 1990). In addition, even when a prisoner is harmed, if prison officials
responded reasonably to the risk, they are not held liable. Farmer, 511 U.S. at
844-45. Courts often dismiss isolated failures to protect as "mere negligence,"
even when prison officials had prior information about a threat to a prisoner, but
failed to act on that information. See Davidson v. Cannon, 474 U.S. 344, 347-48
(1986).

There are two ways to show deliberate indifference in a prisoner assault case.
One is to show that prison officials' failed to respond or act reasonably in light of
a particular threat of danger to an individual prisoner. See, e.g., Odom v. South
Carolina Dep't of Corr., 349 F.3d 765, 772 (4th Cir. 2003) (plaintiff warned officer
that other prisoners would try to kill him); Scicluna v. Wells, 345 F.3d 441, 445
(6th Cir. 2003) (plaintiff testified he had told unit manager of risk of assault by his

co-defendant); Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003) (failure to monitor prisoner known to be violent is deliberate indifference); Peate v. McCann, 294 F.3d 879 (7th Cir. 2002) (plaintiff attacked twice by the same prisoner); Cantu v. Jones, 293 F.3d 839 (5th Cir. 2002) (guards allowed prisoner out of his cell to attack another prisoner); Horton v. Cockrell, 70 F.3d 397 (5th Cir. 1995) (staff failed to protect prisoner from attack despite his grievances requesting protection); Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir. 1992) (guards put sex offender in unsupervised holding cell).  The other is to show prison conditions or practices that create a dangerous situation for prisoners in general)  See, e.g., Butler v. Dowd, 979 F.2d 661, 675 (8th Cir. 1992) (en banc) (random housing assignments of vulnerable prisoners and obstacles to admission to protective housing); Skinner v. Uphoff, 234 F.Supp. 2d 1208 (D. Wyo. 2002) (de facto policy of failing to investigate assaults).  Sometimes both theories apply to the same fact situation.

In addition to showing deliberate indifference, a prisoner must show that the actions or practices of prison officials actually caused the assault.  There must be a connection between what prison officials did or failed to do and the harm that occurred.  See Best v. Essex County, 986 F.2d 54, 56-57 (3rd Cir. 1993).  Thus, courts have imposed liability on line correctional officers who observed an assault or knew of a risk to a prisoner, but did nothing, see, e.g., Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 14 (1st Cir. 1990); on higher-level supervisors who made or failed to make polices, or failed to act on risks they knew about, see, e.g. Redman v. County of San Diego, 942 F.2d 1435, 1447-48 (9th Cir. 1991); and on city or county government when a prisoner's assault resulted from a governmental policy, see, e.g., Berry v. City of Muskogee, 900 F.2d 1489, 1497-99 (10th Cir. 1990).  Courts require prisoners to show how individual named defendants are responsible for causing the assault.  Morales v. New York State Dep't of Corr., 842 F.2d 27, 29-30 (2nd Cir. 1988) (explaining how several defendants were liable in the same incident).

## Use of Force by Prison Staff

With respect to convicted prisoners, prison staff violate the Eighth Amendment when they use force "maliciously and sadistically for the very purpose of causing harm," but they are permitted to use force "in a good faith effort to maintain or restore discipline."  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Courts apply different legal standards to arrestees, pre-trial detainees, and convicted prisoners; however, an inmate generally must show that the force used was not justified by any legitimate law enforcement or prison management need, or was completely out of proportion to that need.  See Graham v. Connor, 490 U.S. 386, 397 (1989) (arrestees); Hudson, 503 U.S. at 5-6 (convicted prisoners).

The amount of force that courts consider excessive depends on the specific fact situation.  As a general rule, however, the force used by prison staff must be more than de minimis (very small or insignificant) to violate the Eighth

Amendment. See Hudson, 503 U.S. at 9-10. Courts disagree on what constitutes a *de minimis* use of force. Compare Hudson, 503 U.S. at 10 (kicks and punches resulting in bruises, swelling, loosened teeth and a cracked dental plate are not *de minimis*) and Riley v. Dorton, 115 F.3d 1159, 1168 (4th Cir. 1997) (sticking pen a quarter of an inch into a detainee's nose, threatening to rip it open and using medium force to slap his face is *de minimis*). If there is a legitimate need to use force and no intent to cause unnecessary harm, prison staff can use serious and even deadly force without violating the Constitution. See, e.g., Whitley v. Albers, 475 U.S. 312, 322-26 (1986) (use of shotgun in riot/hostage situation). However, when no such legitimate need exists, courts will be more likely to find an Eighth Amendment violation. See, e.g. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (use of pepper spray on a prisoner who "had not jeopardized any person's safety or threatened prison security" provided valid basis for Eighth Amendment claim).

However, prisoners do not need to show a serious or permanent injury to establish an Eighth Amendment violation. The extent of the injury is simply one factor to consider in deciding whether staff acted maliciously and sadistically or in good faith. See Hudson, 503 U.S. at 7-9. Establishing malice does not require direct proof of what was in an officer's mind. Prison staff's actions alone, in light of the circumstances, may be sufficient to show malice. See Thomas v. Stalter, 20 F.3d 298, 302 (7th Cir. 1994). Moreover, sexual abuse or rape of a prisoner by staff is, by definition, a "malicious and sadistic" use of force. Smith v. Cochran, 339 F.3d 1205, 1212-13 (10th Cir. 2003).

⑦

# KNOW YOUR RIGHTS
# DISCIPLINARY SANCTIONS AND PUNISHMENT

### ACLU National Prison Project

**Important Note:** The law is always evolving.  If you have access to a prison law library, it is a good idea to confirm that the cases and statutes cited below are still good law.  The date at the bottom of this page indicates when this information sheet was last updated.

## Examples of disciplinary punishment

Examples of disciplinary punishment include:  physical punishment, punitive segregation, losing visitation privileges, restricting visitation privileges, monetary restitution, water deprivation, reducing shower privileges and extending sentences.  You may not have received a disciplinary hearing before receiving this type of punishment or, if you did, it may not have been a fair hearing.  Unfortunately we do not have the resources to assist the many prisoners who have written us about these sorts of problems.  We can, however, provide the following information.

## Challenging the Nature of the Punishment You Received

Courts give deference to prison officials' decisions about disciplinary punishment.  Punishments that fulfill legitimate penological interests (e.g., rehabilitation and crime prevention) are generally upheld.  The Supreme Court has provided four factors to decide whether prison regulations violate the Constitution.[1]  These factors are:  (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation.[2]

For example, the Supreme Court has held that a prison administration's decision to restrict visitation for prisoners with two substance abuse violations served the legitimate goal of deterring drug and alcohol use within prison.[3]  The Court found that the punishment fulfilled the four evaluation factors listed above although the ban on visits from people other than clergy and attorneys on official business lasted a minimum of two years.[4]

Monetary restitution for property damage or other offenses that cost the prison money is

---

[1] See Turner v. Safley, 482 U.S. 78, 89-91 (1987).

[2] Id.

[3] Overton v. Bazzetta, 539 U.S. 126 (2003).

[4] Id.

Last updated: 11/05

1

a permissible form of punishment.[5]  Because many prisons have various "tiers" or "levels" of discipline, with different punishments for each, prisoners who commit the same violation may receive different punishments.  However, disparities in punishment do not necessarily violate constitutional rights unless the challenged punishment can be proven to be arbitrary.[6]

Although courts would find most punishments with legitimate penological interests constitutional, they have found punishments that involve physical abuse or degrading conditions of punitive confinement unconstitutional.[7]  Although courts are reluctant to interfere with the administration of prisons, they probably will dislike punishments that are disproportionate, or that offend idealistic concepts of dignity, civilized standards, humanity and decency.[8]  However, courts rarely find prison punishments disproportionate.[9]

### Challenging the Disciplinary Sanction Itself

Prisoners may challenge disciplinary sanctions imposed on them under the Due Process Clause of the Fourteenth Amendment.[10]  The Supreme Court has said that inmates are not entitled to hearings (or other due process procedures) for disciplinary punishments unless (1) there is a state-created liberty interest in freedom from such punishment, and (2) the punishment imposes atypical and significant hardship.[11]  The Supreme Court has not fully defined "atypical and significant hardship."  Most circuits have found that administrative segregation without more does not rise to the level of an atypical and significant hardship.[12]  However, in Wilkinson v. Austin, the Supreme Court concluded that being sent to a supermax facility with limited human contact for an indefinite sentence and with no opportunity for parole does satisfy the "atypical and

---

[5] Longmire v. Guste, 921 F.2d 620, 623-24 (5th Cir. 1991).

[6] Phillips v. Gathright, 603 F.2d 219 (4th Cir. 1979).

[7] Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968) (Eighth Circuit enjoined the use of the strap until proper regulations and safeguards against abuse were implemented).

[8] Id.

[9] See, e.g., Savage v. Snow, 575 F.Supp. 828, 836 (S.D.N.Y. 1983) (upholding 90 days loss of good time and confinement in segregation for abuse of correspondence).

[10] Prisoners may also base their challenges on state law grounds, citing state prison regulations or statutes. State prisoners seeking to invalidate an unlawful criminal conviction or sentence must generally first exhaust their state court remedies, then seek federal court relief through a writ of habeas corpus. Only if the conviction or sentence is overturned may the prisoner-plaintiff then pursue a damages action for an unlawful conviction or sentence under 42 U.S.C. § 1983. See Heck v. Humphrey, 512 U.S. 477, 486, 114 S.Ct. 2364, 2372 (1994).

[11] Sandin v. Conner, 515 U.S. 472 (1995).

[12] See Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Pichardo v. Kinker, 73 F.3d 612 (5th Cir. 1996); Luken v. Scott, 71 F.3d 192 (5th Cir. 1995).

Last updated: 11/05

significant hardship" test.[13]

Once a prisoner asserts that the discipline imposed is significant and atypical, he or she must still establish that the procedures in place were inadequate. To make this determination, a court must consider three factors: (1) the private interest involved; (2) the risk of an erroneous deprivation of such interest and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens that different or additional procedural requirements would entail.[14] For example, although the Supreme Court concluded in Wilkinson v. Austin that being sent to a supermax facility *could* violate the Due Process clause, it ultimately concluded that the procedural safeguards were sufficient, and that there was no constitutional violation. In reaching this decision, the Court put much emphasis on the fact that the prisoner was given notice and an opportunity to be heard, and was provided with many opportunities to challenge an erroneous Supermax placement.[15]

The Supreme Court has held that prisoners cannot sue for monetary damages under 42 U.S.C. § 1983 for loss of good time until they get their disciplinary conviction set aside through the prison appeal system or in state court.[16]

[13] 125 S.Ct. 2384, 2394-95 (2005).

[14] Id.

[15] Id. at 2395-98.

[16] Edwards v. Balisok, 520 U.S. 641 (1997).

Last updated: 11/05

3

...ing

FILED

1  COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

2  C / AUG 20  AM 11: 23

3  Name Soltero, Victor  RICHARD W. WIEKING
      CLERK, U.S. DISTRICT COURT
4  (Last)          (First)  NORTHERN DISTRICT OF CALIFORNIA (Initial)

5  Prisoner Number CDCR # K36340

6  Institutional Address Salinas Valley State Prison D9-173

7  P.O. BOX 1050, Soledad, CA. 93960

8  ==================================================

9          UNITED STATES DISTRICT COURT
10         NORTHERN DISTRICT OF CALIFORNIA

11  Victor Daniel Soltero
    (Enter the full name of plaintiff in this action.)

12         vs.                         Case No. _____ 4256 PJH
                                       (To be provided by the clerk of court)

13  JOE MC GRATH; M.S. EVENS; G.

14  PONDERS % J. RUELAS; AND SOME   COMPLAINT UNDER THE
    OR ANY PERSON(S) NAMED THEREIN SUPPORTING)  CIVIL RIGHTS ACT, (PR)
15  DOCUMENTS (SEE VCG&CB CORRESPONDENCE  42 U.S.C §§ 1983
    INCLOSED AS EXIBIT "A" WHOM FUTURE
16  APPOINTED COUNSEL PER 42. USC 1988,
    AND/OR 42 USC. 1997e(d) MAY DEEM
17  APPROPIATE
    (Enter the full name of the defendant(s) in this action)

18  [All questions on this complaint form must be answered in order for your action to proceed..]

19  I.   Exhaustion of Administrative Remedies

20       [Note: You must exhaust your administrative remedies before your claim can go

21       forward. The court will dismiss any unexhausted claims.]

22       A.   Place of present confinement _____

23       B.   Is there a grievance procedure in this institution?

24            YES (X)     NO ( )

25       C.   Did you present the facts in your complaint for review through the grievance

26            procedure?

27            YES (X)     NO ( )

28       D.   If your answer is YES, list the appeal number and the date and result of the appeal at
         IAB Case No: 0610668      LOCAL LOG NO.: SVSP 07-00214
         AND APPEAL(S) FOUND AT GOVT. CLAIMS PROGRAM VCG&CB
         400 R STREET 5th floor. SACRAMENTO, CALIFORNIA 95814.
    COMPLAINT                        -1-
              CLAIM NO. G566872. (SEE EXIBIT A, RE:
         GOVT. CODE SECTION 955.4 SERVICE OF SUMMONS AND
         COMPLAINT).

FILED

07 AUG 20 AM 11: 23

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9

10   VICTOR DANIEL SOLTERO

11                                    Plaintiff,          CASE NO. _____ 4256

12       VS.                                          PRISONER'S
         JOE MCGRATH; M.S.EVENS; G. POODEOS; J.        APPLICATION TO PROCEED PJH
13       EVGLIAT; AND SOME OR ANY PERSON(S) NAMED      IN FORMA PAUPERIS
         THEREIN SUPPORTING DOCUMENTS (SEE                                              (PR)
         VCCCB CORRESPONDANCE IN EXIBIT "A" OF
14       COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 USC.
         1983) WHOM FURTHER APPOINTED COUNCEL
         PER 42 USC. 1988 AND/OR          Defendant
         42 USC 1997 MAY DEEM APPROPIATE.

15

16          I, VICTOR DANIEL SOLTERO declare, under penalty of perjury that I am the plaintiff in

17   the above entitled case and that the information I offer throughout this application is true and correct.

18   I offer this application in support of my request to proceed without being required to prepay the full

19   amount of fees, costs or give security. I state that because of my poverty I am unable to pay the

20   costs of this action or give security, and that I believe that I am entitled to relief.

21          In support of this application, I provide the following information:

22   1.    Are you presently employed?                    Yes _____ No  X

23   If your answer is "yes," state both your gross and net salary or wages per month, and give the name

24   and address of your employer:

25   Gross: _____     Net: _____

26   Employer: _____

27   _____

28   If the answer is "no," state the date of last employment and the amount of the gross and net salary

EXIBIT

Amend. 'A'

# CALIFORNIA DEPARTMENT OF CORRECTIONS

| NAME: SOLTERO | CDC #: K36340 | BED: D-9-166L |
|---|---|---|

## COMMITTEE ACTION SUMMARY

REFER TO THE CSR FOR A 45 DAY ASU EXTENSION TO COMPLETE THE INVESTIGATION RELATIVE TO ENEMY CONCERNS. RETAIN IN ASU PENDING CSR REVIEW AND COMPLETION OF THE INVESTIGATION. ESTABLISH MAX CUSTODY AND WG/PG OF D2D EFFECTIVE 10/16/2006, DUE TO THE SUBJECT BEING ON C STATUS PRIOR TO PLACEMENT IN ASU. CLEAR FOR SINGLE CELL AND WALK ALONE YARD. PSYCH IS CLEAR.

## COMMITTEE'S COMMENTS

Inmate SOLTERO appeared before Salinas Valley State Prison's (SVSP's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) for his Initial ASU Review. SOLTERO stated that his health was good and was willing to proceed. SOLTERO received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, SOLTERO was introduced to the committee members.

According to SOLTERO'S CDC 114D, he was placed into SVSP's ASU on 10/16/2006 for: Protect the integrity of a preliminary investigation into threats the subject may have received on his life which would endanger the safety and security of the institution.. ICC notes SUBJECT'S ASU placement was ordered by Lieutenant J. Celaya. The placement was ordered due to protect the integrity of an ongoing investigation. The CDC 114D was issued to SUBJECT within 48 hours of ASU placement. Confidential information was not used for this ASU placement. The Administrative review was held by Captain G. Ponder . A staff Assistant was not assigned . SUBJECT did not request witnesses for the Initial ICC Hearing, therefore an Investigative Employee was not necessary. Visiting restrictions while housed in ASU were reviewed with SUBJECT.

The Mental Health Clinician spoke to him regarding his ASU placement noting SUBJECT is not a participant in the MHSDS at any LOC and current mental health status is stable. Continued ASU placement is not likely to result in decomposition of the inmate's mental health condition and SUBJECT is able to understand and participate in the classification hearing. Subject's central file does not reflect in cell violence or predatory behavior. Subject is clear for Single cell occupancy. The CDC forms 812, 812C, 127, 840, and MCSF have all been reviewed and or updated as necessary.

Based upon a review of SOLTERO'S CDC 114D, Central File, case factors, and through discussion with him, committee elects to: Refer to the CSR for a 45 day ASU extension to complete the investigation relative to Enemy Concerns. Retain in ASU pending CSR review and completion of the Investigation. Establish MAX Custody and WG/PG of D2D effective 10/16/2006, due to the Subject being on C status prior to placement in ASU. Clear for Single cell and walk alone yard. Psych is Clear. At the conclusion of this review, SOLTERO was informed of his Appeal Rights with regards to this committee's actions. SOLTERO acknowledged his understanding and disagreement with committee's actions. Soltero included the following statement, "I deny emphatically any legitimacy to the said information, on 114D of 10/16/2006. I have no recollection nor any knowledge of receiving a threat to my life or safety nor have I articulated, gestured, written, or indicated to any person(s) that I received any such threat(s) as stipulated there upon the 114D administrative segregation unit placement notice, dated f10/16/2006, Inmate hereby disqualifies above said ill-conceived notion(s)."

STAFF ASSISTANT Not Assigned: (Issues not complex and non-participant in MHSDS)

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| MAX | 161/IV | D2D - 10/16/2006 | MEPD 2/24/2021 | 12 (R) | 11/2/2006 | 32 | MEX | 1st | IPCH 10/2018 |

| RECEIVED | RECEIVED FROM & TYPE OF TX | RECEIVED CDC | COUNTY OF COMMITMENT | SENTENCE | RESTITUTION |
|---|---|---|---|---|---|
| 6/22/2004 | CAL Non-Adverse | 2/6/1997 | San Diego | 26 Years to Life | $7700.00 |

| COMMITMENT OFFENSE |
|---|
| 1st Degree Murder |

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| I/O | Willfully Obstructing/Delaying PO, Battery on an Inmate W/SBI, Delaying a Peace Officer in the performance of Duty, Refusing to Submit to Urinalysis, Possession of Dangerous Contraband, Flooding, Att to introduce contraband into Ad Seg, Participation in a Riot |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 10/2/2006 | Clear as of 10/2/2006 | Clear as of 10/2/2006 |

| ENEMIES | GANG/TIP | CONFIDENTIAL |
|---|---|---|
| Noted on CDC 812 & CDC 812C | No Gang | Noted & Reviewed |

| MEDICAL | TB - DATE 128C | DENTAL | DPP | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty | 22 - 5/3/2006 | 3 | N/A | Alcohol, Cocaine, Marijuana |

| PSYCH | MDO | DDP |
|---|---|---|
| Clear | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER, & MCCF ELIGIBILITY | | |
|---|---|---|---|---|
| 180 Design (A1) | Single Cell | Camp Eligible: No VIO - LIF | CCF Eligible: No VIO - LIF | CCRC Eligible: No VIO - LIF |
| | | MSF Eligible: No VIO - LIF | SAP Eligible: No VIO - LIF | Rest. Center Eligible: No VIO - LIF |
| | | MCCF Eligible: No - | | |

| FFTTP | HWD | JOB ASSIGNMENT |
|---|---|---|
| US Citizen | None | Unassigned |

## COMMITTEE MEMBERS

MEMBERS

B.F. Rankin, FC; C. Sanders, PhD

CHAIRPERSON
M. Moore III, CDW (A)

RECORDER
V. Solis, CCII (Sup)

10-26-07

EXIBIT
Amend. 'B'