STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
                                                                       CDC-12BB (8-87)

NAME  Soltero        NUMBER K-36340           C8-228U

On 8-23-06 you were seen by Unit Classification Committee and placed in General Population Behavior Modification Unit. A treatment program was established for you with the first step being the signing of the Behavior expectation chrono. You refused to sign the chrono and therefore will not proceed any further in step one until you comply with the first part of the program. You should be aware that this action on your part is deemed a failure to program. Should this continue you will receive progressive disciplinary action.

ORIGINAL      : C FILE
C             :
                                    G. Ponder
                                    C Facility Captain
                                    Salinas Valley State Prison

DATE: August 23, 2006

NAME: **Soltero**　　　　CDC #: **K36340**　　　HOUSING: **C8-225L**　　　CDC 128-A (Rev. 4/74)

On 12-22-06 you failed to participate in the facility interviews. Interviews are designed to gather information and assist the administration with returning the facility to a normal program. By failing to interview the administration is unable to determine the threat you pose to other inmates and/or staff and/or your having any information relative to the incident (criminal/gang activity which occurred) that requires the interview process per D.O.M. 55015 Unlock Protocol. Based on this it appears that you are promoting the activity of organized criminal/gang/disruptive group activity which occurred that required an investigation/interview process to be implemented. As a general population inmate you are expected to comply with departmental policy, rules and regulations as well as Institutional procedures, State and Federal Laws. By failing to participate in the interview process you are willfully indicating that you may have information and could actively be participating and promoting in organized criminal gang/disruptive group activity. You were non receptive to counseling. You are instructed to comply with the interview process. Failure to do so will result in progressive discipline.

c.c. Central File
　　 Facility Captain
　　 Correctional Counselor
　　 Writer
　　 Housing Officer
　　 Inmate

*M. Nilsson*

M. Nilsson
Facility C Program Sergeant
Salinas Valley State Prison

DATE: **12/28/06**　　　　　　　　　　　　　　　　　　　COUNSELING CHRONO

EXIBIT

AMEND. 'I'

# MEMORANDUM



Date:  November 14, 2005

To:  Inmate Soltero K36340

Subject:  **NON-CONTACT VISITING/FACILITY C INTERVIEW PROCESS**

On July 14, 2005 an inmate attacked and stabbed two correctional officers during the morning meal within C8. Due to this assault the facilities as well as the institution were placed on modified program pending administrative review.

As part of the review process, all C Facility inmates will be interviewed concerning the assault that occurred on July 14th, any possible threats on staff or inmates and the ability to safely program. You, Inmate __Soltero__ have been identified as either failing to successfully complete the interview process or interviewing in such as fashion that staff cannot determine the threat you pose to staff or inmates. Based on these two factors, staff has either determined you as a potential threat to staff or inmates or is unable to determine your threat to staff or other inmates. Based on this you will remain on modified program and be placed on the bottom of the list to be reviewed for program potential. Staff will continue the review process of those inmates that participate in an attempt to return them to normal program.

Based on this you will remain on modified program to include **personal hygiene canteen draw only, no quarterly packages, no special purchase.** Also due to your refusal/failure to comply with the interview process and administrations inability to ascertain your threat status you will be placed on **non-contact visiting**. These modifications will remain in effect until further notice.

Remember, the Department values the sanctity of humane life and will not allow anyone to place another human life in jeopardy. Your help is needed and expected to achieve this goal.

G. Ponder
Facility C
Salinas Valley State Prison

California Department of Corrections and Rehabilitation

Salinas Valley State Prison

# MEMORANDUM



Date: December 29, 2005

To: M. S. Evans
Warden (A)

Subject: **SALINAS VALLEY STATE PRISON FACILITY C PROGRAM STATUS**

This memorandum is to update the population on the Facilities program status. Although the threat is active and the investigation into the attempted murder of two Peace Officers is ongoing, a process has been developed to return inmates to normal program. Based on the number of serious incidents by inmates that completed the process and were released to normal program, the inmate population appears to continue to succumb to peer pressure and condones this violence as acceptable in a level IV 180 general population setting. Violence is not acceptable.

The process requires that inmates comply with interviews and sign chronos indicating their commitment to program without violence. Then each inmate has been rated by staff as to the inmates known behavior indicating their potential for promoting or engaging in violence. Next each inmate's central file is reviewed and their counselor rates the inmate's violence potential based on his case history. All this is then reviewed and a determination is made regarding the inmates need to attend a violence diversion course. Unfortunately the process of review and determining the individual inmates need for a violence diversion program is an involved one in addition to the class size being limited. Those inmates that have been rated as having a low potential for violence, are endorsed as meeting the 270 housing criteria or are level III have been cleared to be released to program without needing the violence diversion course. Each inmate is reviewed on a case by case basis and ratings are only a guideline as is any step in the process.

Those inmates that refused to interview or interviewed in a fashion that indicated they were a risk to be or promote violence will be re-interviewed soon. I understand that a portion of the population will always be disruptive; however using the current process, we will identify those inmates and place them in an environment that does not place staff or inmates at risk due to their actions.

Inmates that fail to act in accordance with Departmental rules and institution procedures will receive housing and program changes. Inmates are advised that their privileges and access to programs will be restricted, consistent with existing rules, regulations, and policies until each as an individual successfully complies with this process.

G. PONDER
Associate Warden (A) Complex II
Salinas Valley State Prison

*implementation is not by committee action per CCR 3375 ? ... why ? in my floor staff doing division work?*

Name  Solterro

Date  3/11/05

(SVP-FCP-05-02-0090)

On Tuesday February 8, 2005, a Battery on an Inmate occurred on the Patio area involving four Southern Hispanic inmates and a White inmate. Per Operational Procedures #23, interviews will be conducted for all Southern Hispanic inmates on Yard #2

1. Do you feel this incident may have caused tension between the Southern and White inmate population?

2. Do you know why this incident occurred?

3. Are there any issues among the Southern Hispanic and White Inmates that may have led to this incident?

4. If the Southern and White Inmate population were returned to normal program, do you foresee any further problems?

Inmate Signature   _____

Interviewed By   _____
                Print Name

                _____
                Sign Name

**Note: There is a 5-minute minimum on all interviews.**

EXIBIT
Amend 'J'

STATE OF CALIFORNIA                                   ARNOLD SCHWARZENEGGER, Governor

**OFFICE OF ADMINISTRATIVE LAW**  
300 Capitol Mall, Suite 1250  
Sacramento, CA 95814  
(916) 323-6225 FAX (916) 323-6826  
e-mail: staff@oal.ca.gov

William L. Gausewitz, Director



October 19, 2006

Victor Daniel Soltero K-36340  
Salinas Valley State Prison C8-228  
P.O. BOX 1050  
Soledad, CA 93960

Dear Mr. Soltero:

You have asked for the rules and regulations concerning the Behavioral Modification Unit at Salinas Valley State Prison. The Office of Administrative Law cannot identify any regulations on point, however, we are not experts on correctional regulations. We suggest you contact a private attorney or

Regulations and Policy Management Branch  
Correctional Standards Authority  
CDCR  
P.O. Box 942883  
Sacramento, CA 94283-0001


Legal Staff  
Office of Administrative Law


Cc: Tim Lockwood

EXIBIT 'K'

'K-1';
'K-2'; and
'K-3'.

Case 3:07-cv-04256-PJH   Document 27-3   Filed 04/02/2008   Page 9 of 19

*(handwritten annotations in margins: "(d)", "(1)", "SEE (d) (1)(c)", "THE FOLLOW CONDITIONS ARE MET. (C) THE CERTIFICATION AND REGULATIONS ARE FILED WITH THE OFFICE OF ADMINISTRATIVE LAW..")*

"(d) The following regulations are exempt from Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code under the conditions specified:

*87261 "(1) Regulations adopted by the director or the director's designee applying to any legislatively mandated or authorized pilot program or a departmentally authorized pilot program, provided that an estimate of fiscal impact is completed pursuant to Section 6055, and following, of the State Administrative Manual dated July 1986, and that the following conditions are met:

"(A) A pilot program affecting male inmates only shall affect no more than 10 percent of the total state male inmate population; a pilot program affecting female inmates only shall affect no more than 10 percent of the total state female inmate population; and a pilot program affecting male and female inmates shall affect no more than 10 percent of the total state inmate population.

"(B) The director certifies in writing that the regulations apply to a pilot program that qualifies for exemption under this subdivision.

"(C) The certification and regulations are filed with the Office of Administrative Law and the regulations are made available to the public by publication pursuant to subparagraph (F) of paragraph (2) of subdivision (b) of Section 6 of Title 1 of the California Code of Regulations.

"The regulations shall become effective immediately upon filing with the Secretary of State and shall lapse by operation of law two years after the date of the director's certification unless formally adopted by the director pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

"(2) Action or actions, or policies implementing them, taken by the department and based upon a determination of imminent danger by the director or the director's designee that there is a compelling need for immediate action, and that unless that action is taken, serious injury, illness, or death is likely to result. The action or actions, or policies implementing them, may be taken provided that the following conditions shall subsequently be met:

"(A) A written determination of imminent danger shall be issued describing the compelling need and why the specific action or actions must be taken to address the compelling need.

"(B) The written determination of imminent danger shall be mailed within 10 working days to every person who has filed a request for notice of regulatory actions with the department and to the Chief Clerk of the Assembly and the Secretary of the Senate for referral to the appropriate policy committees.

"Any policy in effect pursuant to a determination of imminent danger shall lapse by operation of law 15 calendar days after the date of the written determination of imminent danger unless an emergency regulation is filed with the Office of Administrative Law pursuant to subdivision (e). This section shall in no way exempt the department from compliance with other provisions of law related to fiscal matters of the state.

*87262 "(e) Emergency regulations shall be adopted pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, except that:

"(1) Notwithstanding subdivision (e) of Section 11346.1 of the Government Code, the initial effective period for emergency regulations shall be 160 days.

"(2) No showing of emergency is necessary in order to adopt emergency regulations other than a written statement by the director or the director's designee, to be filed with the Office of Administrative Law, certifying that operational needs of the department require adoption of the regulations on an emergency basis.

"(3) This subdivision shall apply only to the adoption and one readoption of any emergency regulation.

"It is the intent of the Legislature, in authorizing the deviations in this subdivision from the requirements and procedures of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, to authorize the department to expedite the exercise of its power to implement regulations as its unique operational circumstances require."

*(handwritten: "SEE GOVT. § 11340.5 ALSO GOVT § 11340 *205310 4. REGULATIONS GOVERNED "...DETAILED GUIDELINES... THE REGULATION(S) MUST IMPLEMENT, INTERPRET, OR MAKE SPECIFIC THE LAW ENFORCED OR ADMINISTERED,..")*

2002 Legislation

Stats.2002, c. 787 (S.B.1798), in subd. (c)(3), deleted "or director's designee" following "director".

Subordination of legislation by Stats.2002, c. 787 (S.B.1798), to other 2002 legislation, except Stats.2002, c. 784 (S.B. 1316), see Historical and Statutory Notes under Family Code § 17400.5.

2000 Main Volume

© 2006 Thomson/West. No claim to original U.S. Govt. works.

PENAL 5058, Rules and regulations; administration of prisons and parole of persons; promulgation

Statewide administrative regulations pertaining to contact visits of inmates at state prisons were violated by prison policy of allowing persons who had previously refused to submit to a strip search into the prison only after strip searching them, and only for noncontact visits. In re French (App. 1 Dist. 1980) 164 Cal.Rptr. 800, 106 Cal.App.3d 74. Prisons ⚖4(6)

### 6. Invalidly promulgated regulations

Department of Corrections could not rely on amendment to regulation incorporating six cubic feet limit on prisoners' personal property to enforce another regulation which set forth in great detail particular items of personal property subject to limitation, including books and other such materials, where latter regulation was not adopted in accordance with the Administrative Procedure Act. Faunce v. Denton (App. 3 Dist. 1985) 213 Cal.Rptr. 122, 167 Cal.App.3d 191. Administrative Law And Procedure ⚖392.1; Prisons ⚖4(7)

### *87268 7. Exhaustion of administrative remedies

The exhaustion of administrative remedies requirement is jurisdictional, and a court cannot hear a case before a litigant exhausts administrative remedies. Wright v. State (App. 3 Dist. 2004) 19 Cal.Rptr.3d 92, 122 Cal.App.4th 659. Administrative Law And Procedure ⚖229

An inmate who did not complete the third level review process of his claim alleging medical malpractice did not exhaust the available administrative remedies, and the Department of Correction's delay did not excuse inmates's failure to exhaust his available administrative remedies. Wright v. State (App. 3 Dist. 2004) 19 Cal.Rptr.3d 92, 122 Cal.App.4th 659. Convicts ⚖6

State law provides an administrative remedy for prisoner's claims under a regulation authorizing a prison inmate may appeal any departmental decision, action, condition, or policy adversely affecting the inmate's welfare. Wright v. State (App. 3 Dist. 2004) 19 Cal.Rptr.3d 92, 122 Cal.App.4th 659. Prisons ⚖13(10)

### 8. Grooming

Native American inmate faced possibility of irreparable injury absent issuance of preliminary injunction, in action under Religious Land Use and Institutionalized Persons Act (RLUIPA), preventing California Department of Corrections (CDC) from enforcing grooming policy requiring male inmates to maintain hair no longer than three inches, where his religion forbade him from cutting his hair, he suffered continual punishment by CDC as result of such refusal, and he raised colorable claim that policy violated his free exercise rights under First Amendment. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Civil Rights ⚖1457(5)

Grooming policy of California Department of Corrections (CDC), requiring male inmates to maintain hair no longer than three inches, was not least restrictive alternative to achieve CDC's interest in prison security, and thus violated Native American inmate's rights under Religious Land Use and Institutionalized Persons Act (RLUIPA), where inmate was confined in minimum-security prison, CDC failed to discuss whether it considered religious exception to policy, and CDC failed to explain why its women's prisons did not adhere to equally strict grooming policy. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Prisons ⚖4(14)

*87269 Grooming policy of California Department of Corrections (CDC), requiring male inmates to maintain hair no longer than three inches, imposed substantial burden on Native American inmate's religious practice within meaning of Religious Land Use and Institutionalized Persons Act (RLUIPA), notwithstanding that he was not physically forced to cut his hair, where he was subjected to punishments including confinement to his cell, imposition of additional duty hours, and reclassification into less desirable workgroup. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Prisons ⚖4(14)

### 9. Injunction

Balance of hardships favored Native American inmate seeking preliminary injunction, in action under Religious Land Use and Institutionalized Persons Act (RLUIPA), preventing California Department of Corrections (CDC) from enforcing grooming policy requiring male inmates to maintain hair no longer than three inches, notwithstanding that inmate was due to be released in 18 days, and that CDC had compelling interest in security, health, and hygiene, where inmate was confined in minimum-security prison. Warsoldier v. Woodford, C.A.9 (Cal.)2005, 418 F.3d 989. Civil Rights ⚖1457(5)

Current through Ch. 729 (end) of 2005 Reg.Sess. urgency legislation & Governor's Reorganization Plans No. 1 & 2 of 2005, and all Initiative Measures Appearing on Nov. 8, 2005 ballot

© 2006 Thomson/West. No claim to original U.S. Govt. works.

GOVT § 11340, Legislative findings and declarations

10 Witkin Cal. Summ. 9th Parent and Child § 298B, (New) Department of Child Support Services.

## ANNOTATIONS

## NOTES OF DECISIONS

Availability of review 11
Compliance, generally 7
Construction and application 1
Construction with other laws 2
Injunctive relief 8
Jurisdiction, standard of review 10
Legislative intent 3
Local agencies 6
Necessity of regulations 5
Purpose 3
Regulations, necessity 5
Regulations governed 4
Review, availability 11
Standard of review, generally 9
Standard of review, jurisdiction 10

*[handwritten: SEE: 3. PURPOSE  4. REGULATIONS GOVERNED.]*

### 1. Construction and application

The Administrative Procedures Act (APA) provides procedures for state agencies to adopt regulations, which include public notice of the proposed regulation, an opportunity for comment by interested parties, and review by the Office of Administrative Law. Rea v. Workers' Comp. Appeals Bd. (App. 2 Dist. 2005) 25 Cal.Rptr.3d 828, 127 Cal.App.4th 625.

*205309 In order to carry out its objectives of advancing meaningful public participation in the adoption of administrative regulations by state agencies and creating an administrative record assuring effective judicial review, the Administrative Procedure Act (APA) (1) establishes basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations, which give interested parties an opportunity to present statements and arguments at the time and place specified in the notice and calls upon the agency to consider all relevant matter presented to it, and (2) provides that any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Administrative Law And Procedure ⚬⇁ 392.1

### 2. Construction with other laws

Evidence Code provision presuming that official duty has been regularly performed did not require court to give substantial deference to Department of Health Services' (DHS) determination that its rulemaking fully complied with the Administrative Procedure Act (APA). California Advocates for Nursing Home Reform v. Bonta (App. 1 Dist. 2003) 130 Cal.Rptr.2d 823, 106 Cal.App.4th 498, as modified. Statutes ⚬⇁ 219(9.1)

There were no irreconcilable conflicts between Porter-Cologne Water Quality Control Act and Administrative Procedure Act (APA) such as would support finding that regulations in former were impliedly exempted from latter; mere fact that Porter-Cologne Act had its own procedural requirements did not, in and of itself, create conflict. State Water Resources Control Bd. v. Office of Admin. Law (App. 1 Dist. 1993) 16 Cal.Rptr.2d 25, 12 Cal.App.4th 697, rehearing denied. Administrative Law And Procedure ⚬⇁ 383; Environmental Law ⚬⇁ 170

### 3. Purpose

The Administrative Procedure Act (APA) was designed in part to prevent the use by administrative agencies of "underground" regulations, and it is the courts, not administrative agencies, which enforce that prohibition. California Advocates for Nursing Home Reform v. Bonta (App. 1 Dist. 2003) 130 Cal.Rptr.2d 823, 106 Cal.App.4th 498, as modified. Administrative Law And Procedure ⚬⇁ 4.1

One purpose of the Administrative Procedure Act (APA) is to ensure that those persons or entities whom a regulation will affect have a voice in its creation, as well as notice of the law's requirements so that they can conform their conduct accordingly. California Advocates for Nursing Home Reform v. Bonta (App. 1 Dist. 2003) 130 Cal.Rptr.2d 823, 106 Cal.App.4th 498, as modified. Administrative Law And Procedure ⚬⇁ 4.1

One purpose of Administrative Procedure Act (APA) is to ensure that those persons or entities whom regulation will affect have voice in its creation, as

© 2006 Thomson/West. No claim to original U.S. Govt. works.


GOVT § 11340, Legislative findings and declarations

well as notice of law's requirements so that they can conform their conduct accordingly. Tidewater Marine Western, Inc. v. Bradshaw (1996) 59 Cal.Rptr.2d 186, 14 Cal.4th 557, 927 P.2d 296, certiorari denied 117 S.Ct. 1862, 520 U.S. 1248, 137 L.Ed.2d 1062. Administrative Law And Procedure ⊘4.1

**\*205310 4. Regulations governed**

California director of department of corrections, even in promulgating detailed guidelines, as distinguished from general regulations, must comply with procedural requirements of state Administrative Procedure Act (this section et seq.). Hillery v. Rushen, C.A.9 (Cal.)1983, 720 F.2d 1132. Prisons ⊘4(1)

In order for an agency regulation to be subject to the Administrative Procedure Act (APA), the regulation must implement, interpret, or make specific the law enforced or administered by the agency, or govern the agency's procedure. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Administrative Law And Procedure ⊘382.1

In order for an agency regulation to be subject to the Administrative Procedure Act (APA), the agency must have intended its rule to apply generally, rather than in a specific case; the rule need not, however, apply universally, but is considered to have general application so long as it declares how a certain class of cases will be decided. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Administrative Law And Procedure ⊘382.1

Determination by Department of Water Resources (DWR) as to whether "revenue requirement" submitted to Public Utilities Commission (PUC) to recover costs incurred by DWR in purchasing electrical power during statewide energy crisis was just and reasonable was not regulation, and thus determination was not governed by Administrative Procedure Act (APA); determination did not constitute agency standard of general application, but rather was calculation of amount of specific, reimbursable costs for finite period of time. Pacific Gas and Electric Co. v. State Dept. of Water Resources (App. 3 Dist. 2003) 5 Cal.Rptr.3d 283, 112 Cal.App.4th 477. Waters And Water Courses ⊘203(6)

The department of developmental services' parental fee schedules are not subject to California's Administrative Procedure Act (§ 11340 et seq.) nor its consequent review and approval by the office of administrative law as such schedules fall within the exception provided for in the act for the fixing of "rates, prices or tariffs." 66 Op.Atty.Gen. 505, 12-28-83.

**\*205311 5. Necessity of regulations**

Department of Health Services was not excused from promulgating regulation relating to its random sampling and extrapolation method for auditing Medi-Cal providers by policy under this act of reducing number of administrative regulations; it was for Office of Administrative Law to determine whether regulation was unnecessary and nonduplicative, such that it would be disapproved. Grier v. Kizer (App. 2 Dist. 1990) 268 Cal.Rptr. 244, 219 Cal.App.3d 422, modified, review denied. Administrative Law And Procedure ⊘389; Health ⊘464

The adjustment of prescription drug prices pursuant to Welf. and Inst.C. § 14105.7 may be accomplished by means other than adopting and amending formal regulations under provisions of the Administrative Procedure Act (this section et seq.). 67 Op.Atty.Gen. 50, 2-16-84.

**6. Local agencies**

Although state's Administrative Procedure Act (APA) does not apply to hearings before local, as opposed to state, administrative agencies, to the extent citizens generally are entitled to due process in the form of a fair trial before a fair tribunal, the provisions of the APA are helpful as indicating what the Legislature believes are the elements of a fair and carefully thought out system of procedure for use in administrative hearings. Nightlife Partners v. City of Beverly Hills (App. 2 Dist. 2003) 133 Cal.Rptr.2d 234, 108 Cal.App.4th 81. Administrative Law And Procedure ⊘5

**7. Compliance, generally**

Community association's application to governor to convene a "Tanner Board" for administrative appeal of issuance of conditional use permits for expansion of hazardous waste facility was not incomplete, and thus, was not a valid basis for governor to refuse to convene board, where there was no defect in the application that could be cured by the association, missing information was merely that state agency permits had not been obtained, and state Environmental Protection Agency extrastatutory procedure to resubmit application was not a valid administrative regulation and went beyond requirements of Tanner Act for administrative appeal. Padres Hacia Una Vida Mejor v. Davis (App. 5 Dist. 2002) 117 Cal.Rptr.2d 727, 96 Cal.App.4th 1123. Environmental Law ⊘455

\*205312 Although state department of health services' interpretation that interim rate reductions for Medi-Cal reimbursement were nonappealable constituted permissible departure from earlier interpretation, interpretation was procedurally invalid where undertaken without any attempt at complying with § § 11340 to 11356 governing administrative agency rule making. Goleta Valley Community Hosp. v. State Dept. of Health Services (App. 2 Dist. 1983) 197 Cal.Rptr. 294, 149 Cal.App.3d 1124. Health ⊘500

Where an agency had adopted an administrative regulation in accordance with the procedural steps specified in § 11371 et seq. (repealed), relating to the adoption of administrative regulations, governing such procedures and before the agency has submitted the adopted regulation for filing with the secretary of state, § 11340 et seq. which established the office of administrative law to review administrative rules and regulations, which replaces Gov. C. § 11371 et seq.

© 2006 Thomson/West. No claim to original U.S. Govt. works.



Page 1

Citation/Title
49 Cal. Jur. 3d Penal, Etc., Institutions § 9

\*80188 California Jurisprudence 3d
Penal and Correctional Institutions
Part One. Penal and Correctional Institutions
II. State Penal and Correctional System
A. In General; Administration
1. In General

Topic Summary; Correlation Table

### § 9. Director of Corrections -- Promulgation of rules and regulations

**West's Key Number Digest**

West's Key Number Digest, Prisons ⚷4(1), 9.

    The Director of Corrections may prescribe and amend rules and regulations for the administration of the prisons, [FN1] and, with the exception of prisoners requiring treatment by the State Department of Mental Health as a condition of parole, for the administration of the parole of persons sentenced under the determinate sentencing statute. [FN2] which must be promulgated and filed pursuant to the provisions of the Administrative Procedure Act. [FN3] They must, to the extent practical, be stated in language that is easily understood by the general public. [FN4] The rules and regulations prescribed by the director must be reasonable and not an abuse of discretion. [FN5]

    The Director of Corrections must maintain, publish, and make available to the general public, a compendium of the rules and regulations promulgated by the director. [FN6]

**CUMULATIVE SUPPLEMENT**

Cases:

    While the Department of Corrections cannot interpret regulations arbitrarily or capriciously, it does not abuse its discretion when it has some basis in fact for its decision. In re Dikes, 121 Cal. App. 4th 825, 18 Cal. Rptr. 3d 9 (1st Dist. 2004), opinion modified, (Aug. 17, 2004).

[END OF SUPPLEMENT]

[FN1] Pen. Code, § 5058, subd. (a).

[FN2] Pen. Code, § 5058, subd. (a), referring to Pen. Code, § 2962 and Pen. Code, § 1170 respectively.

[FN3] Pen. Code, § 5058, subd. (a), referring to Gov. Code, §§ 11340 et seq.

[FN4] Pen. Code, § 5058, subd. (a).

[FN5] In re Ferguson, 55 Cal. 2d 663, 12 Cal. Rptr. 753, 361 P.2d 417 (1961).

\*80189 [FN6] Pen. Code, § 5058, subd. (b).

© 2006 Thomson/West. No claim to original U.S. Govt. works.

Citation/Title
9 Witkin, Cal. Proc. 4th (1997) Admin Proc, § 118, p. 1162, a. [§ 118] Invalidity of Regulation.

*_ Supplement

Witkin
California Procedure, Fourth Edition
B.E. Witkin and Members of the Witkin Legal Institute
Chapter XIV. Administrative Proceedings
IV. JUDICIAL REVIEW
D. Review of Rulemaking.
3. Declaratory Relief.

**a. [§ 118] Invalidity of Regulation.**

**a. [§ 118] Invalidity of Regulation.**

Under the A.P.A., "*any interested person*" may obtain a judicial declaration on the validity of a regulation by an action for declaratory relief. The declaratory judgment action is brought in superior<<* p.1163>> court "in accordance with the Code of Civil Procedure." (Govt.C. 11350(a).) The procedures generally applicable to declaratory judgment proceedings under C.C.P. 1060 et seq. apply. (*Los Angeles v. State Dept. of Public Health* (1958) 158 C.A.2d 425, 443, 322 P.2d 968 [former Govt.C. 11440 (now Govt.C. 11350) effectively amended C.C.P. 1060 to add validity of administrative regulation to subjects for declaratory relief enumerated in that statute]; see 12 Stanf. L. Rev. 826 [denial of retroactive effect to invalidation of rule]; on declaratory relief generally, see 5 *Cal. Proc.* (4th), *Pleading,* §805 et seq.) The right to declaratory relief is not affected by failure to petition, or seek reconsideration of a petition, for adoption, amendment, or repeal of a regulation. (Govt.C. 11350(a); on petitioning for administrative regulatory action, see supra, §35.)

The regulation may be declared invalid on the following grounds:

(1) "Substantial failure" to comply with the Act's rulemaking provisions (Govt.C. 11340 et seq.). (Govt.C. 11350(a); see *Masonite Corp. v. Superior Court* (1994) 25 C.A.4th 1045, 1053, 1054, 31 C.R.2d 173, 49 C.R.2d 639 [regulation adopted by administrative agency is invalid if inconsistent with provisions of governing statute].)

(2) In the case of an emergency regulation or order for repeal under Govt.C. 11346.1 (supra, §38), the facts recited in the agency's statement of need for immediate action do not constitute an emergency. (Govt.C. 11350(a).)

(3) The agency's determination that the regulation is reasonably necessary to effectuate the purpose of the provision of law being implemented (supra, §37) is not supported by substantial evidence. (Govt.C. 11350(b)(1); see *Agricultural Lab. Rel. Bd. v. Exeter Packers* (1986) 184 C.A.3d 483, 492, 229 C.R. 87 [court must apply substantial evidence standard in determining whether regulation is reasonably necessary].)

(4) The agency's declaration under Govt.C. 11346.5(a)(8) that the regulation will not have a significant adverse economic impact on business enterprises (supra, §39) is in conflict with substantial evidence in the record. (Govt.C. 11350(b)(2).)

(5) A regulation adopted under Fin.C. 3373 or 8054 was not made available to the public pursuant to Govt.C. 11343.4(b) (supra, §37). (Govt.C. 11350(c).)

The approval of a regulation by the Office of Administrative Law or the Governor's overruling of a decision to disapprove a

© 2006 Thomson/West. No claim to original U.S. Govt. works.

9 Witkin, Cal. Proc. 4th (1997) Admin Proc, § 118, p. 1162, a. [§ 118] Invalidity of Regulation.

regulation may not be considered. (Govt.C. 11350(d).)<<* p.1164>>

The action must be brought before proceedings are commenced to enforce the rule. Once enforcement proceedings commence, administrative mandamus becomes the exclusive remedy. (*Tushner v. Griesinger* (1959) 171 C.A.2d 599, 605, 341 P.2d 416; on review of administrative adjudications by administrative mandamus, see infra, §122.)

****SUPPLEMENT****

9 Witkin, Cal. Proc. 4th (2006 supp.) Admin Proc, § 118, p. 376

**a. [§ 118] Invalidity of Regulation.**

p. 1163:

*Interested person may obtain declaratory relief:* See *Voss v. Superior Court* (1996) 46 C.A.4th 900, 923, 54 C,R.2d 225 [issuance of marketing order by Secretary of Department of Agriculture pursuant to Food &<<*Supp. p.377>> Ag.C. 58601 et seq. could be challenged by action for declaratory relief]; *Farm Sanctuary v. Department of Food & Agriculture* (1998) 63 C.A.4th 495, 502, 74 C.R.2d 75 [Department of Food and Agriculture regulation allowing department to approve religious ritualistic slaughter of poultry could be challenged by declaratory judgment action; declaratory relief is appropriate where questions of public interest are involved, including avoidance of cruelty to animals].

Govt.C. 11350 was amended in 2000 to also authorize judicial review of orders repealing administrative regulations.

(5) *Regulation not made available to the public:* The version of Govt.C. 11350(c) discussed in the text never became operative.

*Overruling of decision to disapprove regulation may not be considered:* Govt.C. 11350(d) should be Govt.C. 11350(c).

(New) *Record of review:* In a proceeding under Govt.C. 11350, the court may consider the following evidence ( Govt.C. 11350(d), added in 2000):

(1) The rulemaking file prepared under Govt.C. 11347.3 (see text, §39).

(2) The written statement in support of an emergency regulation or order of repeal under Govt.C. 11346.1 (see text, §38).

(3) An item required to be included in the rulemaking file that has been omitted, for the sole purpose of proving its omission.

(4) Information relevant to whether the A.P.A. requires that a regulation be adopted.

(New) *Standing of organization to challenge validity of regulation:* In *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 C.A.4th 1011, 50 C.R.2d 892, an environmental group sought a judicial declaration that a Board of Forestry regulation exempting timber operations on parcels of land of less than three

© 2006 Thomson/West. No claim to original U.S. Govt. works.

9 Witkin, Cal. Proc. 4th (1997) Admin Proc, § 118, p. 1162, a. [§ 118] Invalidity of Regulation.

acres from the necessity of preparing a timber harvest plan was unauthorized by the Public Resources Code and hence invalid. The group was a bona fide environmental organization with several hundred members in three major timber producing counties. *Held,* plaintiff had standing to contest the regulation.

(a) In *Associated Boat Industries of Northern Calif. v. Marshall* (1951) 104 C.A.2d 21, 230 P.2d 379, the case on which defendant principally relies, this court held that a trade association composed of members subject to a challenged regulation, but not itself so subject, was not an "interested person" under Govt.C. 11350(a). The court reasoned that the association's status was a purely representative one, acting on behalf of its members, because it could not be legally affected by the regulation, and that it accordingly lacked standing under the statute. (43 C.A.4th 1016.) Subsequently, however, in *Residents of Beverly Glen v. Los Angeles* (1973) 34 C.A.3d 117, 109 C.R. 724, a nonprofit civic<<*Supp. p.378>> corporation that consisted of approximately 300 families was found to have standing to challenge a conditional use permit granted to a developer in their area where the nonprofit corporation's pleadings sufficiently alleged that its members would suffer injury from the *_ planned development. The court there suggested that the focus should not be on the word "interested" alone, but rather on whether either the plaintiff or its members might be impacted by the challenged administrative action. On reflection, this court agrees with the *Residents* court and disapproves of *Marshall.* It simply no longer makes good sense to draw a hard-and-fast line between an organization, particularly a nonprofit one, and its members in analyzing whether that organization is an "interested party" for purposes of the statute. Accordingly, this court now holds that an organization may be an "interested person" for purposes of Govt.C. 11350 "if either it or its members is or may well be impacted by a challenged regulation." (43 C.A.4th 1017.)

(b) Plaintiff states that the practical effect of the regulation here has been to deprive it and its members of the right to inspect and comment on timber harvest plans before timber operations take place on parcels of three acres or smaller. This argument has considerable merit. The fact that plaintiff and its members are, by virtue of the regulation, denied the ability to review and comment means, at the very minimum, that they could be subject to the challenged regulation and hence must be considered interested parties for purposes of Govt.C. 11350(a). (43 C.A.4th 1019.)

(c) Defendants urge the court to digress from established California law regarding standing and import into California law principles derived from such United States Supreme Court cases as *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351, 7 *Summary* (10th), *Constitutional Law,* §139. That case held that an organization challenging governmental action affecting the environment lacked standing to sue. It did so, however, with particular reference to the "case and controversy" language of U.S. Const., Art. III and the long line of cases respecting that language, cases that, among other things, have required that the plaintiff show not only "injury in fact" but also injury that is both "concrete and particularized," "actual or imminent," causally connected with the conduct complained of, and "likely" as opposed to "speculative." Whether this should be the law in California need not be discussed, because it clearly is not. This court perceives neither justification nor authorization to import these federal law principles into the state's jurisprudence. (43 C.A.4th 1020.)

Contents Index and Tables

© 2006 Thomson/West. No claim to original U.S. Govt. works.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VICTOR DANIEL SOLTERO,
   Plaintiff,

v.

JOE MCGRATH, et al.,
   Defendant.

CASE NO: C07-4256 PJH (PR)

PROOF OF SERVICE

I, the undersigned, hereby certify that I am over the age of eighteen (18) years, and not a party to the above-entitled action. On March 26, 2008, I served a copy of: COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 USC 1983, AMENDED COMPLAINT, RE: ORDER DATED MARCH 10, 2008 by placing said copy in a postage paid envelope, fully sealed, addressed to the party(ies) hereinafter listed, by depositing said envelope in the United States Mail:

1. Office of the Clerk, U.S. District Court
   NORTHERN DISTRICT OF CALIFORNIA
   450 Golden Gate Avenue
   San Francisco, CA 94102

2.

3.

4.

I declare under penalty of perjury that the foregoing is true and correct.

D. W. Vieth
Signature

Donald W. Vieth
Typed Name

High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

LEGAL MAIL



RECEIVED
MAR 31 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Office of the Clerk U.S. District Court
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, CA 94102


STATE PRISON

